**Wanda OATES, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**Civ. A. No. 85–3997.**

United States District Court,
District of Columbia.

Sept. 4, 1986.
As Corrected Oct. 3, 1986.

Amy E. Wind, Kator, Scott & Heller, Washington, D.C., for plaintiff.

Nancy R. Dorsch, Asst. Corp. Counsel, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiff alleges that the defendant, acting through the District of Columbia Board of Education, unlawfully denied her the right to become head football coach at F.W. Ballou High School (Ballou) in the District of Columbia because of her sex. She argues that the defendant is guilty of sex discrimination which deprived her of her civil rights, under color of law, in violation of 42 U.S.C. § 1983. The plaintiff seeks injunctive relief and damages.

After filing her complaint, the plaintiff moved for a preliminary injunction. *See* Fed.R.Civ.P. 65. At the hearing on the motion, the parties called a number of witnesses and introduced exhibits. They also agreed to consolidate the hearing on the motion with a trial on the merits.[1] *See* Fed.R.Civ.P. 65(a)(2). The case is now before the Court for final disposition. The Court has filed an order granting judgment for the defendant and dismissing the case with prejudice. The Court now sets forth its findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52.

## I

Before addressing the merits, it is necessary for the Court to briefly set forth the contentions of the parties. The plaintiff alleges that, in April 1985, the extra-duty pay position of coach of the Ballou football team was advertised along with other extra-duty coaching positions as required by the Collective Bargaining Agreement (CBA) between the Washington Teachers Union and the District of Columbia Board of Education. The plaintiff applied for the position, was found to be qualified by the school principal, and on June 26, 1985, was appointed to serve as Ballou's head football coach for the 1985 season. She contends that she would have been the first female high school football coach in the District of Columbia and, indeed, in the United States. She alleges that, sometime in late July 1985, Dr Andrew Jenkins, Deputy Superintendent of Schools, informed her that the appointment was no longer effective, and that Frank Young, a temporary teacher, who had not applied for the position, would instead coach the team during the 1985 season. Plaintiff contends that once it came to the attention of Dr. Jenkins that she had been appointed coach, he took steps to vacate the appointment and to reappoint Mr. Young, who had served as head football coach in 1984. Plaintiff contends that the only reason her appointment was vacated was because she is a female.

Not surprisingly, the defendant disputes the contention of the plaintiff that her sex played any part in her non-selection as head football coach. Rather, according to the defendant, at the time Mr. Young was appointed in 1984, he was appointed for three years and therefore, in April 1985, when the position was advertised, there was no opening. Defendant contends that the coaching position was advertised in error and that when this was brought to the attention of the plaintiff, the plaintiff advised that she had no objection and that she had applied for the position because she did

---

1. The parties did not request a jury trial in this case notwithstanding that the plaintiff seeks compensatory damages.

not want the job to go unfilled by a teacher at Ballou. In short, defendant contends that the appointment was made in error and that the plaintiff voluntarily withdrew from consideration once the facts were made know to her. Plaintiff argues, however, that she was misled into withdrawing in that she was advised by Dr. Jenkins that Mr. Young was entitled to the position under the CBA, but that she later learned that this was not the case. Finally, the defendant argues that the plaintiff is not qualified for the position.[2] Defendant points out that Mr. Young had previously played football and had served for several seasons as an assistant football coach before being appointed as head football coach at Ballou. The plaintiff has never played or coached football.

One final issue raised by the defendant is the contention that the plaintiff failed to utilize the union grievance procedure. Plaintiff argues that the grievance procedure was not available in the case of a discrimination complaint.

## II

The plaintiff has served as a full-time physical education teacher at Ballou for over 20 years. During that time she has coached male and female students at the school in basketball, track, softball and soccer. All of the sports she coached, except for soccer, involved women's teams. She has coached men and women in soccer. On twelve occasions, her teams won league championships, and she was twice named as "Coach of the Year", and was honored by Ballou in 1974, 1975, and 1976. She also served as athletic director at Ballou in the early 1980's; the first female in the District of Columbia to serve in that position.

In 1984, the football coach at Ballou retired and it became necessary to appoint a new football coach for the 1984–1985 school year. At that time, the school was a special project assigned to Dr. Jenkins as the result of a number of complaints concerning the operation of the school. Dr Jenkins learned that Ballou was experiencing difficulty in obtaining a new football coach. At about the same time, Mr. Young was recommended to him as a person who was qualified to be coach. It was Dr. Jenkins' understanding that Mr. Young was "very experienced" as a football coach; he had served as assistant football coach at Anacostia, Eastern, and Chamberlain Vocational high schools. He spoke with Mr. Young on several occasions about Young taking on the coaching assignment. When they discussed the assignment, it was understood that the assignment was for a period of three years. Dr. Jenkins discussed the matter with Mrs. Jones, the principal at Ballou, and Mr. Young was appointed head football coach in 1984.

At the time of his appointment as head football coach, Mr. Young was a substitute teacher and as such, was not entitled to enter into a three year extra-duty pay contract under the CBA. Under the terms of the CBA, a substitute teacher is not entitled to a three year appointment. In fact, as a substitute teacher, Mr. Young could not sign an extra-duty pay authorization, and the form was actually signed by Mr. Pearson, the athletic director. Indeed, the CBA provides in part (CBA, Article XXIX(C)(1) [1982–1985 CBA at 42, 1985–1987 CBA at 36].):

No later than April 30 of the current school year, the supervisor shall make available to all ET–15 personnel in the school a list of vacancies and the qualifi-

---

2. With respect to the question of qualifications, Dr. Jenkins testified that the school system is very sensitive on this issue in view of a pending lawsuit brought against the District of Columbia by a student enrolled at Dunbar High School who is permanently paralyzed as the result of injuries suffered playing high school football. Dr. Jenkins testified that he understands that the litigation is expected to center around the coaching and training involved.

The defendant contends that the plaintiff is not qualified to serve as head football coach because she has never played or coached football. But, as defendant must concede, there are no specific qualifications for the position. Perhaps the defendant should establish qualifications for the position of head football coach, but that is not the issue in this case. Defendant has failed to demonstrate that the plaintiff is not qualified to coach high school football.

cations for positions for which there is extra-duty pay along with a seniority list of building faculty. The list of vacancies shall include those positions held by a teacher for three years. Interested teachers shall apply within a two-week period stating their qualifications. Three year incumbents who wish to be considered for the position they hold must reapply. All subsequent vacancies shall be made known to all teachers and interested teachers shall apply within a two-week period.

Since Mr. Young did not fall within the ET–15 category, he was not eligible to be selected to the position. The fact that Mr. Young did not sign the authorization was unknown to Dr. Jenkins. Mr. Pearson, the athletic director signed it and then distributed the extra pay, which amounted to approximately $900, between Mr. Young and the assistant coaches as is the custom.[3] Apparently it has been the practice of the head football coach to share his extra pay with the members of the coaching staff who volunteer their services.

When Dr. Jenkins selected Mr. Young for the position, he intended that the selection be for three years even though Mr Young was not qualified to sign a three year agreement under the CBA, and even though he did not formalize the agreement. In short, the intention of Dr. Jenkins and Mr. Young was that the appointment was for three years. And, although Dr. Jenkins did not formally advise Mrs. Jones that the appointment was for three years, she understood and believed that to be the case.

Mr. Young coached the Ballou football team in 1984, and in 1985, coached the team to an overall 7–5 record and the team tied for the city title but lost in the playoffs. For his efforts, Mr. Young was named "Coach of the Year".

In April 1985, the athletic director at Ballou advised the principal of vacancies on the coaching staff, and one of the vacancies was football coach. The vacancy announcement was dated April 19, 1985 and was posted and was placed in the mailbox of all teachers. Mrs. Jones personally placed copies of the announcement in the teachers' boxes, but she could not state that she actually placed one in Mr. Young's box. Under the terms of the announcement, anyone interested was to respond by April 26, 1985. Mr. Young did not respond, but the plaintiff did, and she was the only teacher to apply for the position as head football coach. Mr. Young did not see a copy of the announcement. By memorandum dated June 26, 1985, Mrs. Jones, the school principal, announced that the plaintiff had applied and that she had been appointed head football coach for the 1985–1986 school year.

Mr. Young testified that he never saw the announcement, but, in any event, he thought he was still the football coach since he had been appointed for three years. On or about June 7, 1985, a letter was sent to Mr. Young advising him that his temporary employment appointment was to terminate on June 30, 1985. That letter was sent after the vacancy announcement and application date but before the letter announcing that the plaintiff had been selected. A formal termination of appointment effective, June 30, 1985 was signed on or about that date, but a formal order of reappointment to the temporary position to terminate July 30, 1986 was signed on or about July 1, 1985.

In 1984, when Mrs. Jones advised Mr. Young that he had been appointed football coach, she led him to believe that the appointment was for a period of three years. Thereafter, Dr. Jenkins also advised Mr. Young that his appointment was for a period of three years. Both Dr. Jenkins and Mrs. Jones were satisfied with Mr Young's performance as football coach in 1984 and Mrs. Jones would not have advertised the position in April 1985 if she had not been led to believe that there was a vacancy because Mr. Young's position had been declared excess.

---

**3.** It appears that the extra-pay, which amounted to approximately $900, was treated as income to Mr. Pearson although it was distributed among the staff.

■ The Court finds that at the time of the appointment of Mr. Young as head football coach, it was the intention and understanding of Dr. Jenkins, Mrs. Jones and Mr. Young that Mr. Young was to serve in that capacity for three years. It appears, however, that Dr. Jenkins did not take necessary action to have Mr. Young placed in a position which would allow him to remain as football coach, and when this was brought to his attention in June or July 1985, he took immediate action to rectify the problem. When Dr. Jenkins took action to renew or confirm Mr. Young's three year appointment, he was acting in conformity with the agreement he made with Mr. Young in 1984. Thus, while technically a vacancy existed in 1985, no actual vacancy existed.

### III

In sum, the Court finds the non-selection of the plaintiff as football coach had nothing to with the fact that she was a woman. There is no question that the plaintiff would have established a prima facie case if this action had been filed pursuant to Title VII. The plaintiff is a female who applied for the position of head football coach at Ballou High School. She was found to be qualified based upon her grade and her prior experience. The plaintiff was appointed coach and shortly thereafter, her appointment was vacated. Under these facts, the plaintiff established a prima facie case under Title VII. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court finds, however, that while the plaintiff has made out a prima facie case, the defendant has rebutted that case by demonstrating that the decision not to select the plaintiff as head football coach was based on a non-discriminatory reason; the defendant had already entered into an agreement with Mr. Young that he was to serve for three years as football coach and therefore, no vacancy existed at the time of the plaintiff's appointment. The plaintiff has failed to demonstrate that the defendant's explanation is a pretext.

■ Since the plaintiff has failed to prove that she was the victim of discrimination, this action must be dismissed. This being so, the Court need not address whether the plaintiff has established a case under 42 U.S.C. § 1983 since it is clear she has not done so. In meeting that burden, the plaintiff must demonstrate that she was deprived of a federal right and that the person depriving her of that right acted under color of a state or territorial law. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

The Court's decision is limited to the issue of discrimination and whether there has been a violation of 42 U.S.C. § 1983. The Court does not address the issue of whether the defendant violated the CBA. The ruling is without prejudice to plaintiff pursuing any administrative claim or remedy she may have under the CBA.

This action must be dismissed. An appropriate order has been issued.