**Wanda A. OATES, Appellant,**

v.

**DISTRICT OF COLUMBIA.**

**No. 86–7033.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 7, 1987.

Decided July 28, 1987.

Douglas B. Huron, with whom Amy E. Wind, Washington, D.C., was on the brief for appellant.

Victor E. Long, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before WALD, Chief Judge, MIKVA and BORK, Circuit Judges.

MIKVA, Circuit Judge:

Appellant Wanda Oates brought this action under 42 U.S.C. § 1983 (1982), alleging that officials of the District of Columbia revoked her appointment to become head football coach at a local high school because she is a woman. After a two-day evidentiary hearing, the court below entered judgment for the District, finding that it had refused to let Oates be coach for a legitimate, nondiscriminatory reason. Specifically, the court found the District's motivation was to honor a previous commitment made to the old coach. We conclude that the district court's finding was not clearly erroneous, and we therefore affirm the judgment.

## BACKGROUND

The focus of this dispute is the position of head football coach at F.W. Ballou High School in the District of Columbia. Under the Collective Bargaining Agreement (the CBA) between the Washington Teachers' Union and the D.C. Board of Education, coaching is an "extra duty pay activity." Vacancies in extra duty pay slots are filled each spring by the principal, with first priority going to "ET–15 teachers," a category under the CBA that includes permanent teachers but not substitutes. If an ET–15 teacher is selected, that teacher has the right to hold the position for up to three years; other employees have a right to only a one-year appointment.

Ballou's acting football coach during the 1984–85 school year was Frank Young. Ballou's principal, Helena Jones, hired Young in the spring of 1984 with the understanding that Young would fill an open position as a permanent physical education instructor at Ballou and assume a three-year term as football coach. Jones learned in August of 1984, however, that another teacher was entitled to the permanent phys-ed slot. Jones then talked with Dr. Andrew Jenkins, the Deputy Superintendent of Schools, who spoke with Young and arranged for him to have a temporary appointment as substitute teacher at Ballou with coaching responsibilities. Young technically could not be paid as Ballou's coach, because the District does not pay substitutes for extra-duty positions; Ballou's athletic director therefore took over the coaching contract and in turn paid Young, who, it is undisputed, performed all coaching duties.

In April of 1985, the athletic director at Ballou informed Jones of vacancies in coaching positions for the 1985–86 school year. One of the vacancies was for football coach. Jones also learned from the athletic director that the Board of Education had terminated Young's temporary employment effective at the end of the school year. As required by the CBA, Jones posted a list of all available positions by placing a copy of the vacancy announcement in all of the staff mail boxes at Ballou. The announcement was dated April 19, 1985 and invited applications for any of the listed positions within one week. Young testified at trial that he never saw the notice, in his mailbox or elsewhere, and that no one ever mentioned to him that the position of football coach had been posted.

One person applied to be the football coach: appellant Wanda Oates. Oates was a permanent teacher who had taught physical education at Ballou for over 20 years. She had coached both boys and girls in several sports, had received numerous honors, including twice being named Coach of the Year, and had served as Ballou's athletic director. Jones found that Oates was qualified to be football coach and appointed her to the position on June 26, 1985. This

appointment, it would appear, would have made Oates the first woman in the country to serve as coach of a boys' high school football team. The developments that followed Oates's appointment proved interesting.

Some time during the ensuing summer, Dr. Jenkins interceded in the situation. Just how, when, and why Jenkins reentered the picture was the subject of conflicting testimony at trial, and the district court made no findings on the matter. Under Jenkins' version of events, he did not know that Jones had posted the position and appointed Oates, and he first learned Oates was even interested in the coaching position in early July of 1985, when he was called by a reporter from the *Washington Post*. Jenkins testified that at the direction of the District's school superintendent, he then first phoned Oates and asked her about her "concerns." Jenkins said Oates told him she only had applied for the job because she believed no one else wanted it, and that when he told her Young would be available, Oates immediately said she had "no problem" with stepping aside and having Young serve as coach. Jenkins testified (and reiterated under vigorous cross-examination) that only after his conversation with Oates did he phone Jones, who also had no problem with the resolution. Under Jenkins' version, he made no mention of Young's contract rights during his conversations with either Oates or Jones.

The testimony from other witnesses was at odds with Jenkins' account. Oates introduced at trial a statement from the reporter asserting that his first conversation with Jenkins on the situation at Ballou occurred August 8, after Jenkins' discussions with both Jones and Oates. Also, Jones and Oates both testified that Jenkins spoke first to the principal and then called Oates, and the District presents this chronology in the statement of facts in its appellate brief. Jones testified that Jenkins phoned her around July 1 to tell her that her appointment of Oates violated Young's contractual rights. Jenkins explained that he had just reappointed Young as a temporary teacher (although the notice of reappointment introduced at trial was dated August 20), and

that this action entitled Young to remain on as football coach at Ballou. Jenkins advised Jones to check with the labor relations office if she disagreed. Jones spoke with a labor relations officer, who indicated that if Young had been reappointed effective July 1, he might have been entitled to remain on as coach.

Both Jones and Oates testified that the two had a conversation not long thereafter, in which Jones told Oates there might be a problem with her appointment. Oates testified she was surprised and dismayed but said "if that's the situation, then that's the situation." According to Oates, Jenkins phoned her a few days later—around July 18th—and informed her that Young had been rehired as football coach. Oates testified that she said that was fine but only because of her prior conversation with Jones indicating that Young had a contractual right to the position. Oates testified that she never suggested to Jenkins that she did not want the position.

Jones further testified that after Jenkins had spoken with Oates, he phoned Jones and told her that Oates had relinquished the position. Jones then phoned Oates, who confirmed she had relinquished the position and said she had done so because she was "tired."

Some time later, in August of 1985, Oates did some further exploration and came to the conclusion that Young in fact had no right to the coaching position under the CBA. On September 3, Oates wrote a formal letter to Jones informing the principal of her intention to immediately assume coaching responsibilities. Two days later, Jones was directed to write back to Oates informing her that Young had been appointed coach and directing her not to take any action contrary to his appointment.

Oates complied, taking no action during the football season. After the season, however, in December of 1985, Oates filed this action in the District Court for the District of Columbia. Oates alleged that the District, acting under color of law, had discriminated against her on the basis of sex in violation of 42 U.S.C. § 1983. After discovery had been completed, Oates filed a

motion for a preliminary injunction, seeking to prevent Young from continuing as coach during the upcoming season. An evidentiary hearing took place April 28 and 30, 1986, at which time the parties agreed to consolidate the hearing on the motion with trial on the merits. On August 29, 1986, the district court entered judgment for the District. In a Memorandum Opinion issued shortly thereafter, the court held that Oates had made out a *prima facie* case of sex discrimination but that the District had successfully rebutted it by showing a legitimate, nondiscriminatory reason for its action. *Wanda A. Oates v. District of Columbia*, 647 F.Supp. 1079 (D.D.C. 1986). The court found that in ousting Oates, District officials were living up to a private agreement with Young that Young would serve as Ballou's football coach for three years. The court found that Young was not qualified to have a three-year appointment under the CBA but nevertheless that the parties intended that he would be coach for three years. The court wrote,

> When Dr. Jenkins selected Mr. Young for the position, he intended that the selection be for three years even though Mr. Young was not qualified to sign a three year agreement under the CBA, and even though he did not formalize the agreement. In short the intention of Dr. Jenkins and Mr. Young was that the appointment was for three years. And, although Dr. Jenkins did not formally advise Mrs. Jones that the appointment was for three years, she understood and believed that to be the case.

*Id.* at 1082. The court concluded that "[w]hen Dr. Jenkins took action to renew or confirm Mr. Young's three-year appointment, he was acting in conformity with the agreement he made with Mr. Young in 1984." *Id.* at 1083. Having found that Oates' ouster was not motivated by sex discrimination, the court dismissed the action and entered judgment for the District. This appeal followed.

## DISCUSSION

A. *Analytical Framework*

■ To make out her claim under 42 U.S.C. § 1983, Oates must establish that, acting under color of law, defendants deprived her of her constitutional right not to be discriminated against on account of her sex. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (recognizing federal constitutional right to be free from gender discrimination that is not substantially related to the achievement of important governmental objectives). It is apparent that the District officials in this case were acting in their official capacities and therefore under color of law, which is equivalent to the "state action" requirement of the Fourteenth Amendment. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The relevant question for this case therefore is whether that official conduct was unlawfully discriminatory for purposes of a section 1983 action. In analyzing this question, courts generally have borrowed the analytical framework established by the Supreme Court for cases brought under Title VII. *See, e.g. Van Houdnos v. Evans*, 807 F.2d 648, 651 (7th Cir.1986); *Lewis v. University of Pittsburgh*, 725 F.2d 910, 915 n. 5 (3d Cir.1983) (citing cases). *See also Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C.Cir. 1984) (employing Title VII elements of proof for section 1981 claim).

■ In *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set out the procedural guidelines for a claim of discrimination brought under Title VII. Under these standards, the plaintiff has the preliminary burden of making out a *prima facie* case of discrimination. For a claim alleging sex discrimination in an employment decision, this means that the plaintiff must show that "she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. Once the plaintiff establishes a *prima fa-*

*cie* case, a presumption of discrimination arises, which the defendant can rebut by coming forward with evidence of some legitimate, nondiscriminatory reason for its conduct. *Id.* at 254, 101 S.Ct. at 1094. The defendant's explanation must be "clear and reasonably specific" in order to permit the plaintiff a full and fair opportunity to rebut it in the next evidentiary stage. *Id.* at 258, 101 S.Ct. at 1096. If the defendant meets its burden of production, the plaintiff may still prevail if she can demonstrate that the proffered reason is pretextual or incredible. *Id.* at 256, 101 S.Ct. at 1095.

In this case, the district court found that the plaintiff had made out a *prima facie* case but that the defendant had successfully rebutted it by producing evidence of a legitimate, nondiscriminatory reason—i.e. that the officials' motivation was to honor a private agreement with Young that he would serve as Ballou's football coach for three years. The district court's finding of fact is entitled to substantial deference on review: it may be set aside only if we find it is clearly erroneous. *See* Fed.R.Civ.Proc. 52(a) (setting out the clearly erroneous standard). Under this standard, we have no cause to disturb the finding of the district court unless, viewing the evidence as a whole, we are left with "the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (reiterating applicability of clearly erroneous standard to findings of fact in Title VII claim).

### B. *Analysis*

It is beyond dispute that Oates made out a *prima facie* case of discrimination. The evidence showed Oates was a female who applied for a position for which she was qualified and to which she was appointed. Her appointment then was vacated and the position was given to a male. *Cf. Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824) (paradigm *prima facie* case of racial discrimination in employment decision where minority plaintiff demonstrates she was rejected for a job for which she was qualified, after which the position remained open and the employer continued to seek applicants). Under these circumstances, the District had the burden of coming forward with evidence of a legitimate, nondiscriminatory reason for Oates' ouster.

In its pretrial papers and evidence adduced at trial, the District offered three nondiscriminatory reasons for its conduct. Its chief theory was that Oates had voluntarily relinquished the job in her conversation with Jenkins in July of 1985. This reason was the only substantive defense raised in the District's answer to Oates' complaint, and it was the main theme in the testimony at trial of Jenkins, who was the District's main witness. The District also claimed that Oates was not permitted to become the coach because she was unqualified; the district court, however, specifically found that the District had failed to substantiate this claim at trial.

The District's third theory, as first articulated in an answer to Oates' interrogatory requesting each and every reason Oates was not permitted to serve as coach during the 1985 season, was that "Frank Young had held the position in 1984, and had not served the three years normally expected by such an appointment." This reason clearly relies on some kind of contract right on Young's part, but it is not clear on its face whether it refers to a contract under the CBA, a private agreement between Young and District officials, or both. One of Oates' principal arguments on appeal is that the District at trial did not clearly articulate the theory that the District's conduct was based on a perceived *private* agreement between Young and District officials. Rather, according to Oates, the district court supplied this reasoning for the District by transmuting the claim the District actually made at trial, which was that Young had a right *under the CBA* to serve three years. The significance of Oates' argument is that under *Burdine's* scheme of shifting allocation of burdens, it is the defendant's responsibility to clearly set forth the nondiscriminatory reason for

its conduct in order to give the plaintiff a full and fair opportunity to demonstrate pretext. *See Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95. Thus, if the district court indeed had relied on a reason that the District had not clearly set forth at trial, its judgment could not stand. *Lanphear v. Prokop*, 703 F.2d 1311, 1316–17 (D.C.Cir. 1983) (reversing district court's judgment for defendant in a Title VII suit because the district court relied on a reason not put forward at trial). Thus, the pivotal question for our determination is whether the District proffered the "private contract" theory at trial. .

We agree with Oates that the District relied, at least in part, on the argument that Young had a right under the CBA to serve as coach for three years. In its answer to Oates's interrogatory, the District explained that Young had not served the three years *normally expected by such an appointment.* This claim seems to reference the normal three-year period provided for permanent employees under the CBA. Moreover, the District at trial called a labor relations specialist, who testified that if Young in fact had been reappointed to his temporary teaching position, the CBA might possibly have granted him the right to remain on as coach. This testimony was clearly irrelevant to the private contract theory. Finally, much of Jenkins' testimony refers to Young's possible rights under the CBA, and Jones's testimony that Jenkins told her that Young's contract rights could be confirmed by calling the labor relations office also suggests that the District relied at least in part on this theory.

However, a thorough examination of the record also satisfies us that the district court did not pull the private contract theory out of thin air. The District also presented testimony that Jenkins relied on his perceived agreement with Young that Young would stay on as Ballou's coach for three years. This evidence was set forth with sufficient specificity and clarity to alert Oates of her opportunity and burden to rebut it. A sampling of Jenkins' testimony at trial will suffice to demonstrate that the District clearly presented a private

contract theory as well as a theory premised on Young's alleged rights under the CBA.

A. I thought that Frank Young did have the right under the collective bargaining agreement, but more so than that, that when Mr. Young was brought on, he was the only person who wanted the job, and also, using the authority of my office, I had allocated a position to be placed there.

Q. Dr. Jenkins, I want to get this straight. Are you saying that you believed, on the one hand, that Frank Young had a right under the collective bargaining agreement or, on the other hand, that he had a commitment from you? I'm trying to figure out which of the two you're saying.

A. Well, he had both.

Q. You're saying he had both?

A. He had both.

Q. Okay.

A. Because I had discussed the issue with him, and I had made promises to him that a position would be placed there and he was now a temporary teacher, and he did have rights under the agreement.

(Tr. 87).

THE COURT: Was there a written agreement in Mr. Young's case?

A: I'm not sure. I never saw the agreement. My discussions with the principal were just that, was of—it wasn't of—I wouldn't say that it was of a formal nature, but it was an understanding that we reached.

(Tr. 122).

A: I knew that Mr. Young was going to be reappointed, because I had made in my mind a three-year commitment.

(Tr. 285).

In addition to this testimony offered at trial, the District had explicitly articulated the private contract theory in writing well before the trial commenced. After Oates had filed a motion for injunctive relief, the District entered a memorandum of points and authorities in opposition to that motion. In its memorandum, the District said:

It is also clear that [Young] and Dr. Jenkins, who had the authority to create positions, including that held by Frank Young, had an understanding that he would continue in the teaching/coaching position beyond 1984–85. As a temporary teacher, Mr. Young, under the Union "Agreement" had a right to remain in the extra duty pay position a minimum of three years. Additionally, management, i.e., the Superintendent and Deputy Superintendent, was able to give a commitment to persons outside the "Agreement," as Frank Young was for the first three months of the 1984–85 school year, of a three year extra-duty pay as long as such a commitment did not abrogate the rights of persons under the agreement. Therefore, in order to honor his agreement and to abide by the Union's negotiated "Agreement," reasons which are not impermissible under Title VII, Dr. Jenkins contacted [Oates]. The explanation was proffered not because of her sex, but out of a desire to be fair to another individual. Plaintiff was not discriminated against on any basis.

Memorandum of Points and Authorities by Defendant in Opposition to Plaintiff's Motion for Injunctive Relief at 9 (citations omitted). This memorandum was filed on April 16, 1986, more than a month before the case went to trial.

■ Moreover, counsel for both parties referred to this private contract theory in their closing arguments to the court. *See* Tr. 316, 322. The District's counsel reiterated the view that "the defendant has articulated a reason for the non-appointment of Ms. Oates. And those reasons are that Dr. Jenkins, contract aside, had made a commitment to Mr. Young that he would be appointed; that he expected him to have a permanent position at least—at the very least, a temporary, hopefully a permanent; and that he would be in that job, as any other extra-duty pay position, for three years." Tr. 322. This explanation, as we have seen, had been initially set forth more than a month before the trial. And in the other closing argument, made earlier, Oates' counsel had addressed this view of the matter, and argued against it. Tr.

315–16. This discussion demonstrates that Oates was aware that the District was offering a private contract theory, and she therefore was not deprived of her right to a full and fair opportunity to rebut the claim.

■ Our review of the record thus does not leave us with "the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). On the contrary, the district court's finding relied on a claim, that, although not the District's principal line of defense, was nevertheless clearly adduced at trial. We therefore have no cause to overturn it under a clearly erroneous standard of review.

■ It does not escape our observation, nor did it escape the district court's, that Young's reappointment, regardless of whether he entered into a private contract to serve three years, appears at odds with the CBA. District officials cannot abrogate the provisions of the CBA by forming private contracts that contravene the CBA's procedural guidelines. But an ill-informed motivation, or even an illegal motivation, is not necessarily a discriminatory one, and not every procedural infirmity gives rise to a constitutional violation. *See Ledoux v. District of Columbia*, 820 F.2d 1293, 1306–07 n. 22 (D.C.Cir.1987) ("To recover under Title VII, the appellants must prove *illegal discrimination*, not flawed personnel practices.") (emphasis in original). Whatever the merits of Oates' claim against the District of Columbia for violation of her rights under the collective bargaining agreement, we cannot, given the record in this case, elevate it to constitutional status.

## CONCLUSION

In not permitting Wanda Oates to serve as football coach at Ballou High, the District of Columbia may have missed an historic opportunity and may in the process have violated its collective bargaining agreement with the Washington Teachers Union. We find, however, that it did not violate Ms. Oates' constitutional right not

to be discriminated against on account of her sex. Because we are unable to conclude that the district court was clearly erroneous in finding that the District acted to fulfill a private contract with the old coach, the judgment of the district court must be, and hereby is, affirmed.

*It is so ordered.*