Margaret T. WHITACRE, Appellant,

v.

James F. DAVEY, et al.

No. 88–5339.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 13, 1989.

Decided Nov. 17, 1989.

David H. Shapiro, with whom Joseph B. Scott and Katherine L. Garrett were on the brief, for appellant.

John Oliver Birch, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence and Mark E. Nagle, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before RUTH BADER GINSBURG, SILBERMAN, and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

This is an appeal from the district court's dismissal of a *Bivens* claim against two court officials who allegedly discriminated in employment against appellant.[1] The district court thought the allegation, which was adequate to allege a statutory violation, was insufficient to make out a constitutional tort. We affirm.

I.

Margaret Whitacre was employed since 1967 by the Office of the Clerk of the United States District Court for the Dis-

---

1. This appeal arises from a Rule 12(b)(6) motion to dismiss, so we assume that appellant's allegations of facts in the complaint, but not its legal conclusions, are true.

trict of Columbia. In August 1985, Whitacre, who was then 51 years old, held one of the two Assistant Clerk positions at a grade 14 level. She was the highest subordinate to James Davey, the Clerk, and in his absence she served as the acting Clerk. On August 8, Davey informed Whitacre of a reorganization of the managerial structure in the Clerk's Office that would result in the creation of a single Chief Deputy Clerk position to replace the two Assistant Clerk jobs. Davey warned her that he intended to remove Whitacre from all managerial responsibilities and place her in a grade 12 position or lower. When Whitacre nonetheless applied for the new Chief Deputy Clerk job, Davey selected Nancy Mayer, the other Assistant Clerk, who was then 31 years old and at that time held a lower grade.

Whitacre lodged an administrative complaint alleging age discrimination with LeeAnn Flynn, the district court's Equal Employment Opportunity ("EEO") Coordinator and the Administrative Assistant to the Chief Judge of the district court. Whitacre requested Flynn to recuse herself from the investigation because of Flynn's allegedly close friendship with Mayer and long association with Davey. Flynn refused, and after an investigation pursuant to the office's informal "Discrimination Complaint Procedures," she found that Davey had not discriminated against Whitacre on the basis of age. In accordance with

the complaint procedures, Whitacre appealed that report to Chief Judge Robinson, who summarily affirmed Flynn's conclusions.

In October 1987, Whitacre filed a Bivens-type [2] action against Davey and Flynn in federal district court. She alleged that Davey discriminated against her on the basis of her age in violation of the fifth amendment's equal protection guarantee. She also claimed that Flynn denied Whitacre her fifth amendment due process right to an unbiased administrative review of her allegations. The complaint demanded $375,000 in compensatory and punitive damages from Davey and Flynn. Upon the defendants' motion, the district court dismissed the complaint for failure to state claims upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). This appeal followed.

## II.

The primary issue presented to us is whether a complaint that sets forth allegations that would constitute a *prima facie* case in certain statutory discrimination actions, such as under Title VII, satisfies our Circuit's heightened pleading standard for *Bivens* actions.[3] In a Title VII action, a *prima facie* case is made out simply by showing that a qualified plaintiff who is a member of a protected class was disadvantaged in favor of a person who is not a

2. *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (permitting damage actions directly under the Constitution against federal officials for violations of fourth amendment rights). Whitacre alleged a constitutional tort for her age discrimination claim since the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, does not cover noncompetitive positions in the judicial branch. *See* 29 U.S.C. § 633a(a).

3. We are very doubtful whether a *Bivens* action for *age* discrimination can be brought. Unlike race or national origin, age is not a "suspect" classification triggering heightened judicial scrutiny under equal protection analysis. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). Since age discrimination does not implicate a suspect class or a fundamental right, Whitacre may not possess "a com-

pensable injury to a constitutionally protected interest" required to invoke a *Bivens* action. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978); *compare Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (authorizing *Bivens* actions for gender discrimination since sex is a quasi-suspect classification). It may be impossible, moreover, to define the age at which a suspect age classification would begin. In the ADEA, Congress drew the line at age 40, but it is hard to see such a constitutional boundary. *Cf. Lowe v. Commack Union Free School Dist.,* 886 F.2d 1364, 1372–74 (2d Cir.1989) (rejecting as arbitrary, in an ADEA disparate impact context, the segmenting of the protected class into age subgroups). Because neither the parties nor the district court raised this issue and they instead focused on the adequacy of the allegations of discrimination, we will assume, *arguendo,* that a *Bivens* claim for age discrimination exists.

member of the protected class. Upon this demonstration, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the employer carries this burden, the plaintiff then must prove by the preponderance of the evidence that the proffered excuse is merely a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. It follows, then, that if a plaintiff alleges a *prima facie* case, the complaint may not be dismissed for failure to state a claim. We have also applied this allocation of burdens in statutory age discrimination suits brought under the ADEA. *See Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). But for reasons we elaborate below, we conclude that this statutorily inspired allocation of burdens is inapposite for *Bivens*-type cases, and therefore appellant's complaint, which would satisfy the Title VII paradigm, does not adequately allege a constitutional tort.

A cause of action directly under the Constitution encompasses fundamentally different interests than a statutory cause of action such as Title VII. *See Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2274–75, 60 L.Ed.2d 846 (1978). In his concurring opinion in *Bivens*, Justice Harlan recognized that the creation of the constitutional cause of action stemmed from the judiciary's historic equitable discretion to grant a traditional remedy at law. *See* 403 U.S. at 405, 91 S.Ct. at 2009 (Harlan, J., concurring). Thus, the question for the judiciary is "whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." *Id.* at 407, 91 S.Ct. at 2010. In deciding the contours of *Bivens* actions, "the range of policy considerations we [the courts] may take into account is at least as broad as the range of those a legislature would consider

with respect to an express statutory authorization of a traditional remedy." *Id.*

The Supreme Court later embraced the policy-making flexibility that *Bivens* claims afford in crafting the scope of qualified immunity for federal officials. The qualified immunity test originally consisted of both objective and subjective elements. A federal official was liable if "he *knew* or reasonably should have known" that his actions violated an individual's constitutional rights, or if he "took the action with the *malicious intention* to cause a deprivation of constitutional rights or other injury ..." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975) (emphasis added). In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court recognized that the subjective elements of that test were "incompatible" with the goal of terminating meritless *Bivens* claims at an early stage. *Id.* at 815–16, 102 S.Ct. at 2736–37. The Court explicitly weighed the need to vindicate constitutional guarantees with the "cost[s] not only to the defendant officials, but to society as a whole" when innocent federal officials face money damage claims. *See id.* at 814, 102 S.Ct. at 2736 (1982). The costs of meritless *Bivens* suits include "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.* In light of these competing interests, the Court required trial judges to identify and quickly terminate "insubstantial lawsuits" at the pleading stage before the commencement of any discovery. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). "Bare allegations of malice" do not suffice to expose federal officials "to the costs of trial or to the burdens of broad-reaching discovery." *Harlow*, 457 U.S. at 817–18, 102 S.Ct. at 2738. Consequently, the Court stripped the qualified immunity test of its subjective elements and held that "government officials performing discretionary functions ... generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

Since "substantial costs attend the litigation of the subjective good faith of government officials," *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737, and since the Court stressed the need to terminate insubstantial *Bivens* claims before trial, *see id.* at 815–16, 102 S.Ct. at 2736–37, we have supplanted the liberal pleading requirements of the Federal Rules with a heightened pleading standard whenever a plaintiff in a *Bivens* claim alleges an unconstitutional motive. *See Martin v. Malhoyt,* 830 F.2d 237, 254 (D.C.Cir.1987); *Smith v. Nixon,* 807 F.2d 197, 200 (D.C.Cir.1986); *Hobson v. Wilson,* 737 F.2d 1, 29 (D.C.Cir.1984) (dicta). Under our heightened pleading requirement, Whitacre's complaint of age discrimination must include "nonconclusory allegations of evidence of such intent" in order to survive a motion to dismiss. *Hobson,* 737 F.2d at 29. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity. *See Martin v. Malhoyt,* 830 F.2d at 254. And we have imposed, in cases where the defendant's subjective intent is an essential part of the claim, a demanding requirement on the plaintiff in order to proceed to trial or obtain discovery. *See Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425, 1435 (D.C.Cir.1987). "[T]o avert dismissal short of trial, [the plaintiff] must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive. That is, some *direct evidence* that the officials' actions were improperly motivated must be produced if the case is to proceed to trial." *Id.* (emphasis added).[4]

Whitacre argues that the degree of specificity needed to make out a Title VII or statutory age discrimination *prima facie* case meets our heightened pleading standard when the constitutional tort alleged is of the same discrimination genre covered by the antidiscrimination statute. We disagree. The minimum Title VII *prima facie* case is composed of only circumstantial evidence, and not overwhelming circumstantial evidence at that. The judiciary has adopted that device both because the legislation interpreted specifically sought to aid members of a protected class,[5] and because switching the burden of pleading to an employer (who has better access to all the information) to give the nondiscriminatory reason for the disputed action was not thought unduly costly. In short, the legislation was construed to provide a plaintiff in a protected class with a rather easy path to a full trial on his or her claim of discrimination. But the Supreme Court has "never held that the constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII...." *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976) (holding that a racially discriminatory purpose must be proved to support an action under the fifth amendment). And as we have noted, the Supreme Court in *Bivens* actions, unlike in statutory discrimination cases, has thought that the desirability of early dismissal of marginal damage claims against federal officials as a matter of policy over-

---

4. In *Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425 (D.C.Cir.1987), we authorized limited discovery for the plaintiffs prior to the determination of qualified immunity on a summary judgment motion. But we permitted this discovery as a one-time exception since our "approach to pretrial development of cases ... [involving unconstitutional motives] was far from clear and certain when the district court made its rulings in Martin's [plaintiff's] favor." *Id.* at 1436. Indeed, we stressed in the denial of rehearing *en banc* that the discovery was permitted in *Martin* "only because of special exigencies in the partic-

ular case." *Bartlett v. Bowen,* 824 F.2d 1240, 1245 (D.C.Cir.1987) (statement of Ruth B. Ginsburg, J., concurring in the denial of rehearing *en banc*). Thus, we made clear that if a plaintiff failed to allege direct evidence of unconstitutional intent, his claim must be dismissed immediately.

5. A non-member of a protected class under Title VII has a much higher burden to allege a *prima facie* case. *See Lanphear v. Prokop,* 703 F.2d 1311, 1315 (D.C.Cir.1983).

rode the interests of plaintiffs in easily getting to trial on those cases.

Appellant stresses that we have applied the Title VII framework in section 1983 discrimination cases under the equal protection component of the fifth amendment, *see Oates v. District of Columbia,* 824 F.2d 87 (D.C.Cir.1987), and therefore we would create inconsistent constitutional adjudication by refusing to extend the framework to *Bivens* actions. She further contends that this inconsistency between *Bivens* claims and section 1983 actions would impermissibly draw distinctions between immunities for federal officials and state officials. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978).

*Oates* was a section 1983 claim for alleged sex discrimination against a physical education teacher at a District of Columbia public high school. The case reached this court on appeal from a judgment for the defendant following a two-day trial. We affirmed. In the process, we invoked the Title VII analytical framework, as did the district court. The defendant, successful in both courts, apparently did not contest that approach. The relevance of *Harlow* to a section 1983 action was simply not considered in *Oates.* That decision preceded our resolution of the pleading issue in *Martin v. Malhoyt.* We cannot count as controlling a decision that never touched upon the issue we confront, all the more so when the outcome on appeal was unaffected by the point.

Alternatively, Whitacre contends that even under a stringent pleading requirement she has satisfied our standard because her *amended* complaint alleged additional facts indicating that Davey has discriminated against older workers in the past. It is alleged that, of the 20 professional appointments Davey had made between 1981 and 1985, only three involved individuals over 50, and Whitacre herself was the subject of two of those appointments. According to the complaint, the remaining appointments involved people under 42.[6] Of course this is still circumstantial rather than direct evidence, but, in any event, we agree with the district court that the proffered statistics would be inadequate even in a statutory context. Without evidence of the pool of available and qualified applicants, we could not know whether the "three selections is [sic] disproportionately small to the pool, disproportionately large, or approximately statistically perfect." *Whitacre v. Davey,* 727 F.Supp. at 639. Therefore, Whitacre's allegations of statistical disparity would not meet even Title VII's liberal evidentiary standards. *See Hazelwood School Dist. v. United States,* 433 U.S. 299, 311–13, 97 S.Ct. 2736, 2743–44, 53 L.Ed.2d 768 (1977); *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 339–40 n. 20, 97 S.Ct. 1843, 1856 n. 20, 52 L.Ed.2d 396 (1977).

### III.

Whitacre's complaint also alleged a *Bivens* claim against Flynn for violating her due process right to a fair and impartial administrative review of her demotion. The district court dismissed this charge, concluding that a "failure to recuse" has never been the foundation for a *Bivens* action. To be sure, appellant was entitled under the Due Process Clause to an administrative factfinder free from severe personal conflicts of interests. *See Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). The issue for us, however, is not whether we would have recused ourselves if we were in Flynn's position; instead, the question is whether the constitutional right to a disinterested factfinder requires recusal of Flynn because of Flynn's "friendship" with Mayer, the person who eventually obtained the Chief Deputy Clerk job.

We do not think those facts are of constitutional significance. The Supreme Court

---

**6.** Appellant curiously cut off the statistical analysis at age 42, rather than the age 40 suggested by the ADEA. We do not know whether the statistical allegation would markedly change if the line had been drawn at age 40.

has held that a conflict of interest on the part of a judge (or administrative adjudicator, *see Gibson,* 411 U.S. at 579, 93 S.Ct. at 1698) predicated on a "direct, personal, substantial, [and] pecuniary" stake in the outcome of a case can violate the due process clause. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825–26, 106 S.Ct. 1580, 1587–88, 89 L.Ed.2d 823 (1986) (quoting *Ward v. Village of Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972) and *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927)) (internal quotation marks omitted). *See also Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977). However, the Court has also indicated that not "[a]ll questions of judicial qualification ... involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *Tumey,* 273 U.S. at 523, 47 S.Ct. at 441. Neither the Supreme Court nor any other court that we can determine has thought an adjudicator's mere friendship with a party jeopardizes constitutional due process. Although the Supreme Court has not elaborated a specific standard, the Court has said that "only in the most extreme of cases would disqualification on the basis [of bias or prejudice by a judge] be constitutionally required." *Lavoie,* 475 U.S. at 813, 106 S.Ct. at 1580. *Lavoie* rejected as insufficient a judge's alleged "general frustration" and "general hostility" toward one of the parties. *See id.* at 820–21, 106 S.Ct. at 1584–85. We think appellant's allegations here similarly fall far short of a constitutional violation. Indeed, recognizing a constitutional claim based on appellant's bare allegation of "friendship" would trivialize the due process clause.[7]

Accordingly, we affirm the district court's dismissal of appellant's complaint.

---

7. Since we conclude the allegations do not make out any constitutional violation, we need not decide, as did the district court, whether Flynn's qualified immunity would shield her from suit.