EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION

v.

BROWN PRINTING COMPANY.

Civ. A. No. 88–4700.

United States District Court,
E.D. Pennsylvania.

Nov. 28, 1990.

Jerome Munford, E.E.O.C., Philadelphia Dist. Office, Philadelphia, Pa., for plaintiff.

David R. Hols, Gelhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

Plaintiff Equal Employment Opportunity Commission ("EEOC") instituted this action against defendant Brown Printing Company ("Brown") on June 15, 1988, alleging that the defendant engaged in an unlawful employment practice by applying a stricter attendance policy to Ms. Judie Beadle than

to male employees, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

On July 18, 1989, Judge John B. Hannum granted the defendant's Motion for Summary Judgement. The Court of Appeals reversed, ruling on May 25, 1990, 904 F.2d 694, that the plaintiff had established a *prima facie* case and had presented "evidence sufficient to create the inference that the reasons given for the discharge were pretextual." On remand, the case was assigned to this Court.

On September 4 and 5, 1990 the case was tried by this Court sitting without a jury. For the reasons set forth in the following findings of fact and conclusions of law, the Court finds that Brown Printing Company did not engage in an unlawful employment practice.

## I. FINDINGS OF FACT AND DISCUSSION

Defendant is an employer within the meaning of §§ 701(g) and (h) of Title VII. Judie Beadle was hired by the defendant in 1980, and was promoted to the Quality Control Group in September of 1982.

Attendance Guidelines were issued to pressroom and quality control employees by the defendant in March of 1984. These Guidelines established an "occurrence" system setting out graduated punishments for absence or tardiness, with eight occurrences resulting in either probation or termination.

Judie Beadle experienced attendance problems, and was subjected to the graduated punishments established in the Guidelines. She received an oral warning on May 21, 1984, a written warning on September 12, 1984, and was suspended for three days on November 5, 1984. On November 23, 1984, she was terminated at the discretion of the management pursuant to the Guidelines.

There were two work groups on the shop floor at Brown: the quality control workers and the pressmen who ran the machines. At the time of Ms. Beadle's termination, four of five employees in the Quality Control Group were female,[1] while fifty of fifty-two pressmen positions were held by males. Each group was allowed to vote on their work schedules. The pressmen elected to work twelve hour shifts with six days on followed by three days off. The Quality Control Group chose to work eight hour shifts on weekdays and twelve hour shifts on weekends, with every third weekend off. This resulted in a great deal of overtime being earned by the quality control employees, but demanded that they work nineteen consecutive days followed by only two days off.

In late 1984, an informal policy among the supervisors allowed pressmen to "work off" occurrences on scheduled days off at the rate of ½ occurrence per extra day worked. Under this policy, pressmen were permitted, on their days off, to fill in for absent employees, but were not otherwise permitted to work off occurrences. At least two pressmen, Jeff Kulp and Bill Bender, were allowed to "work off" occurrences in this manner. A third male pressman, Mark Cardy, was dismissed after accumulating eight occurrences.

The informal policy under which pressmen worked off occurrences was not applied to the quality control workers, despite requests by Ms. Beadle and a co-worker. Brown justified this differential treatment as being based on work group, not gender, and necessary due to the different schedules selected by the Quality Control Group and the pressmen. In early 1985 the quality control workers began working under a schedule that allowed more days off, and were offered the opportunity to work off occurrences in the same manner as the pressmen.

## II. CONCLUSIONS OF LAW AND DISCUSSION

■ The plaintiff has brought this case under the doctrine of disparate treatment.

---

**1.** The evidence is somewhat confusing on this point. Page two of the parties' Joint Pretrial Order states that the Quality Control Group "consisted of four female employees, one of whom was a supervisor, and one male employee." Page six of the same document, however, refers to the "all-female Quality Control Department."

Part of the Plaintiff's burden is to prove that the defendant acted with discriminatory intent or motive. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

█ Title VII disparate treatment cases are subject to the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. A *prima facie* case is established in a case involving work rules only if the EEOC shows:

1) That plaintiff was a member of a protected group;

2) That there was a company policy or practice concerning the activity for which he or she was discharged;

3) That the non-minority employees either were given the benefit of a lenient company practice or were not held to compliance with a strict company policy; and

4) That the minority employee was disciplined either without application of a lenient policy or in conformity with the strict one.

*E.E.O.C. v. Charles Schaefer Sons, Inc.*, 703 F.Supp. 1138, 1147 (D.N.J.1988), *citing Brown v. A.J. Gerrard Mfg. Co.*, 643 F.2d 273, 276 (5th Cir.1981). A *prima facie* case was established here on the facts alleged.

Once the plaintiff establishes a *prima facie* case, the employer may respond by articulating a legitimate, non-discriminatory reason for its action. If such a response is made, the *prima facie* presumption drops from the case, and the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the non-dis-criminatory reason cited is merely a pretext for intentional discrimination. *Burdine*, 450 U.S. at 254–256, 101 S.Ct. at 1094–1095.

█ The employer here asserts simply that Ms. Beadle was treated differently than Mr. Kulp and Mr. Bender because she was in a different work group, not because of her gender. While it is true that there is a severe gender imbalance between the two work groups, that imbalance itself (and the hiring practices that created it) is not challenged here. What is challenged is the different treatment under the work rules afforded Ms. Beadle. The Court finds that this reason for differentiating between Ms. Beadle and the two men (that they were members of distinct job groups) is non-discriminatory. The work groups were treated differently because they performed different tasks, were of far different sizes, and had different schedules.[2]

The plaintiff attempts to rebut this assertion of a non-discriminatory reason by pointing out several apparent inconsistencies and illogical elements in the occurrence work-off policy and its non-applicability to quality control workers.[3] While the Court recognizes that this evidence suggests the decision to distinguish between the work groups may not have been wise, the showing of a simple lack of wisdom falls short of establishing the discriminatory intent necessary to prove a Title VII claim.

Any number of poor decisions by the employer can be shown without meeting the burden of showing discriminatory intent. It may have been that the employer misjudged the efficacy of such a plan for quality control workers, but "errors in judgment are not the stuff of Title VII transgressions—so long as the 'mistakes' are not a coverup for invidious discrimination." *Keyes v. Sec'y of the Navy*, 853 F.2d 1016, 1026 (1st Cir.1988). It may have

---

2. The most relevant distinction between the work groups was that of schedule; the employer was reluctant to allow the giving up of days off by quality control workers, all of whom were scheduled to work 19 consecutive days.

3. Among other things, the plaintiff presented evidence that quality control workers occasionally worked before or after a regularly sched-uled shift, traded shifts, and covered for one another. Further, plaintiff demonstrated that in at least one instance a pressman was able to work off part of an occurrence by working part of a day. Taken together, the plaintiff contends that these incidents show that the quality control workers could have worked off occurrences in the same way as pressmen.

been that the employer was not following sound business practices in making the decision, but "the aim [of a Title VII case] is not to review bad business decisions, or question the soundness of an employer's judgment." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990). It may even have been that the policy was not fair to the quality control workers; however, "Title VII and section 1981 do not protect against unfair business decisions— only against decisions motivated by unlawful animus." *Turner v. Texas Instruments*, 555 F.2d 1251, 1257 (5th Cir.1977). *See also, Oates v. District of Columbia*, 824 F.2d 87, 93 (D.C.Cir.1987) ("an ill-informed motivation, or even an illegal motivation, is not necessarily a discriminatory one, and not every procedural infirmity gives rise to a constitutional violation").

There is no evidence to suggest that Brown's decision to terminate Ms. Beadle was influenced by the fact that she was female. To the contrary, the evidence supports defendant's position that it permissibly took Ms. Beadle's work group and its schedule into consideration in making the decision not to allow her to work off occurrences. That conclusion is buttressed by the fact that once the quality control group began working under a schedule more like that of the pressmen, they were allowed to work off occurrences in the same manner as the pressmen.

In short, the plaintiff has failed to carry its most basic burden in a Title VII disparate treatment case—showing that the employer acted with a discriminatory intent or motive. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

Based upon the evidence presented, the Court finds that discrimination in employment has not been shown.