937 F.2d 1382
 60 USLW 2036
 Jerry L. BRANCH, Sylvia Branch, Colby Branch, Plaintiffs-Appellees,
v.
Dale L. TUNNELL, Individually and as Special Agent of Bureau
of Land Management, State of Montana, John D. LaFaver,
Individually and as Director of Revenue, Peter Donnelly,
Individually and as Revenue Agent for Montana Department of
Revenue, Joe Doe I, Individually and as employee of Montana
Department of Revenue, Defendants-Appellants.
 No. 89-35383.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1990.
Decided June 27, 1991.
 
 Ann Southworth, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.
 Robert J. Waller, Veeder & Broeder, Billings, Mont., for plaintiffs-appellees.
 Before HALL, THOMPSON and LEAVY, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Dale L. Tunnell, a Special Agent of the Bureau of Land Management ("BLM"), appeals the denial of his motion to dismiss a Bivens action on grounds of qualified immunity. The district court had jurisdiction under 28 U.S.C. Sec. 1343. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. Sec. 1291. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). We reverse.
 
 
 2
 * In early 1987, Special Agent Tunnell began investigating whether Jerry L. Branch, a Shelby, Montana businessman, was avoiding royalty payments on federal natural gas leases.[1] Branch was the president and controlling interest owner of Branch Oil and Gas Company ("Branch Oil"). At the time, Branch Oil sold the gas produced from its federal leases to Aloe Ventures Gathering System ("Aloe Ventures"), a joint venture in which Branch Oil owned a 42.95% interest. During the course of his investigation, Tunnell came to suspect that this was not an arm's length relationship and that the price at which Branch Oil sold its gas to Aloe Ventures (and from which its federal royalty payment was based) was below-market. He believed that Aloe Ventures, which he suspected was effectively controlled by Branch, was in turn selling the gas to the Montana Power Company at a higher price.
 
 
 3
 Tunnell then sought and obtained warrants from a United States magistrate to search Branch's home and office. He submitted a four-page, single-spaced affidavit in support of his warrant application, setting out in some detail the evidence he had obtained about the alleged royalty evasion scheme. The affidavit attributed a good portion of this information to Peter Donnelly, a revenue agent employed by the Montana Department of Revenue. The warrants were executed on July 16, 1987. No criminal charges were filed against Branch after his home and office were searched.
 
 
 4
 On June 22, 1988, Branch and members of his family brought a Bivens[2] action against Tunnell, Donnelly, and John LaFaver, Director of the Montana Department of Revenue.[3] The complaint alleges a violation of "[t]he right of Plaintiffs to be secure in their persons and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States." It asserts that Branch was the victim of a conspiracy by the Montana Department of Revenue to obtain confidential corporate documents from Aloe Ventures. Branch claims that the search warrant was a pretext to secure those documents.[4] Tunnell's part in this conspiracy is described in two short paragraphs:
 
 
 5
 19. On or about July 15, 1987, Defendant Dale L. Tunnell submitted an Affidavit and Application for Search Warrant to a U.S. Magistrate, Dirk Larsen. In said Affidavit, Tunnell set forth the inaccurate information provided by Donnelly in an effort to establish probable cause for the issuance of a search warrant. In addition to the information provided by Defendant Donnelly, Defendant Tunnell included other information in his Affidavit which he knew or should have known was false.
 
 
 6
 ....
 
 
 7
 24. The Search Warrant issued by the U.S. Magistrate Dirk Larsen was void because much of the information set forth in the Application and Affidavit in Support of Search Warrant filed by Defendant Dale L. Tunnell is false and unsubstantiated.
 
 
 8
 On October 3, 1988, Tunnell moved to dismiss Branch's suit on grounds of qualified immunity, arguing that under the objective qualified immunity standard established by the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Branch had failed to allege sufficient facts to establish a violation of a statutory or constitutional right. The district court, which had allowed Branch to depose Donnelly and LaFaver over Tunnell's objections, stayed further discovery while the motion to dismiss was under consideration. On December 2, 1988, the court denied Tunnell's motion. Relying on Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the court concluded that "[t]he defense of qualified immunity usually turns on the circumstances and motivations of the defendant and, therefore, ordinarily cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted.... Because there exist genuine issues of material fact regarding Tunnel's [sic] claim of qualified immunity, the court is constrained to deny the motion to dismiss."
 
 
 9
 On December 9, 1988, Tunnell moved for reconsideration and a continued stay of discovery pending a ruling on that motion. The court granted the stay on December 12. On January 17, 1989, before the court ruled on his motion for reconsideration, Tunnell filed a motion for summary judgment, again arguing that Branch had failed to allege sufficient facts to defeat his qualified immunity defense.
 
 
 10
 On April 11, 1989, the district court denied Tunnell's motion for reconsideration, but took his motion for summary judgment under advisement, announcing its intention to allow discovery to proceed before issuing a ruling.[5] The court did not narrow or otherwise restrict the scope of discovery. Tunnell timely appealed from the denial of his motion for reconsideration, and the district court stayed all proceedings pending the outcome of this appeal.
 
 II
 
 11
 We review de novo the denial of a qualified immunity defense. Baker v. Racansky, 887 F.2d 183, 185 (9th Cir.1989); Tribble v. Gardner, 860 F.2d 321, 323 (9th Cir.1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).
 
 III
 
 12
 In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Under this standard, the focus of the inquiry generally is on the "objective reasonableness" of the official's conduct as measured by reference to "clearly established law." See, e.g., id; Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); Mills v. Graves, 930 F.2d 729, 731 (9th Cir.1991); Floyd v. Laws, 929 F.2d 1390, 1393 (9th Cir.1991); Ortiz v. Van Auken, 887 F.2d 1366, 1368 (9th Cir.1989).
 
 
 13
 By shifting the focus of the qualified immunity inquiry to an objective standard,[6] the Harlow Court sought to shield government officials from the substantial costs that attend "[j]udicial inquiry into subjective motivation," particularly "broad-ranging discovery and the deposing of numerous persons." 457 U.S. at 817, 102 S.Ct. at 2737. After Harlow, "bare allegations of malice" are insufficient to subject government officials either to the costs of trial or the burdens of discovery. Id. at 817-18, 102 S.Ct. at 2738. Harlow requires district courts to dismiss such "insubstantial" lawsuits at the earliest possible stage of a lawsuit.
 
 
 14
 * There is a tension, however, between Harlow 's emphasis on "objective reasonableness" and cases in which the "clearly established law" at issue contains a subjective element, such as motive or intent. While the Supreme Court has yet to rule on how Harlow should be applied in those cases,[7] a number of circuits have held that Harlow does not preclude consideration of subjective factors (unrelated to knowledge of the law) in assessing a defendant's entitlement to qualified immunity. Siegert v. Gilley, 895 F.2d 797, 801 (D.C.Cir.1990), aff'd on other grounds, --- U.S. ----, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 648 (10th Cir.1988); Musso v. Hourigan, 836 F.2d 736, 743 (2d Cir.1988); Kenyatta v. Moore, 744 F.2d 1179, 1185 (5th Cir.1984), cert. denied, 471 U.S. 1066, 105 S.Ct. 2141, 85 L.Ed.2d 498 (1985); Krohn v. United States, 742 F.2d 24, 31 (1st Cir.1984).
 
 
 15
 The District of Columbia Circuit, mindful of Harlow 's concerns about the costs of judicial inquiry into subjective motivation, has adopted a heightened pleading standard in cases in which subjective intent is an element of the alleged constitutional tort. Siegert, 895 F.2d at 801-02; Whitacre v. Davey, 890 F.2d 1168, 1171 (D.C.Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990); Martin v. D.C. Metro. Police Dep't, 812 F.2d 1425, 1435 (D.C.Cir.1987); Smith v. Nixon, 807 F.2d 197, 200 (D.C.Cir.1986); Hobson v. Wilson, 737 F.2d 1, 29 (D.C.Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). This heightened pleading standard assures that "[b]are allegations of improper purpose, like the bare allegations of malice rejected in Harlow, do not suffice to drag officials into the mire of discovery." Smith, 807 F.2d at 200 (citations omitted).[8] Under that standard, plaintiffs must include in their complaint nonconclusory allegations containing evidence of unlawful intent or face dismissal prior to the taking of any discovery. Whitacre, 890 F.2d at 1171; Hobson, 737 F.2d at 29. Those allegations must "constitute direct as opposed to merely circumstantial evidence of the intent." Siegert, 895 F.2d at 802.
 
 
 16
 Like the District of Columbia Circuit, we conclude that bare allegations of improper purpose are insufficient to subject government officials to discovery and the related burdens of defending a lawsuit. We therefore adopt a heightened pleading standard in cases in which subjective intent is an element of a constitutional tort action. We hold that in order to survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. "The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." Whitacre, 890 F.2d at 1171.
 
 
 17
 We disagree, however, with the District of Columbia Circuit that a plaintiff may only satisfy the heightened pleading standard with direct, as opposed to circumstantial, evidence. Siegert, 895 F.2d at 801-02. While a majority of the Supreme Court, in affirming the judgment in Siegert, did not rule on the propriety of a heightened pleading standard, see supra note 8, we note that the four members of the Court that did expressly reject the District of Columbia Circuit's direct evidence requirement. Siegert v. Gilley, --- U.S. ----, ----, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277 (Kennedy, J., concurring in the judgment); id. at ----, 111 S.Ct. at ---- (Marshall, Blackmun, and Stevens, JJ., dissenting in part), (1991). Because evidence of intent is largely within the control of the defendant and often can be obtained only through discovery, we are unwilling to require a plaintiff to present direct evidence of that intent in order to avert dismissal. We believe a requirement that a plaintiff must put forward nonconclusory allegations of subjective motivation, supported either by direct or circumstantial evidence, before discovery may be had, satisfies Harlow's directive that government officials should be shielded from "insubstantial" lawsuits, while at the same time preserving the opportunity for plaintiffs to pursue meritorious claims. See Krohn, 742 F.2d at 31. Once a plaintiff has met this threshold requirement, the district court may, if it believes discovery is warranted, allow the plaintiff to engage in narrowly tailored discovery, supervising the discovery process to avoid imposing unnecessary burdens upon the defendants. See Anderson, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6 (1987); Krohn, 742 F.2d at 31-32.
 
 B
 
 18
 We now turn to whether a heightened pleading standard is warranted in this case.
 
 
 19
 Branch alleges that Tunnell violated his fourth amendment rights by deliberately or recklessly misleading the magistrate to obtain the warrants with which he searched his home and office. In a criminal proceeding, a defendant challenging the veracity of a warrant affidavit is entitled to an evidentiary hearing only if he makes a "substantial preliminary showing" that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). The Franks standard, although developed in the criminal context, "also defines the scope of qualified immunity in civil rights actions." Rivera v. United States, 928 F.2d 592, 604 (2d Cir.1991); see also Forster v. County of Santa Barbara, 896 F.2d 1146, 1148 n. 3 (9th Cir.1990). Thus, "[i]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, ... he cannot be said to have acted in an objectively reasonable manner," and the shield of qualified immunity is lost. Olson v. Tyler, 771 F.2d 277, 281 (7th Cir.1985) (citing Franks ) (footnote omitted).
 
 
 20
 Because a defendant's entitlement to qualified immunity in a Bivens or Sec. 1983 action alleging judicial deception turns on the ability of the plaintiff to establish that the defendant knowingly or recklessly misled the magistrate, see Rivera, 928 F.2d at 604; Snell v. Tunnell, 920 F.2d 673, 698 (10th Cir.1990); Myers v. Morris, 810 F.2d 1437, 1457-58 (8th Cir.), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); Perlman v. City of Chicago, 801 F.2d 262, 264-65 (7th Cir.1986), cert. denied, 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987); Olson, 771 F.2d at 281; Krohn, 742 F.2d at 31-32, we find that the heightened pleading standard must be satisfied.
 
 
 21
 Applying that standard to a claim of judicial deception, we conclude that a plaintiff's complaint must contain nonconclusory allegations that the defendant knowingly included false statements in the affidavit or did so with reckless disregard. That is, he must "point out specifically the portion of the warrant affidavit that is claimed to be false," Franks, 438 U.S. at 171, 98 S.Ct. at 2684, and allege some facts tending to show that the defendant was aware or should have been aware of the falsity of those statements. He must also allege that the false statements were "necessary to the finding of probable cause," id. at 156, 98 S.Ct. at 2676, but without the particularity required of his allegations regarding the defendant's state of mind.
 
 
 22
 We hasten to add that this standard is a low one. It serves the limited purpose of enabling the district court to dismiss "insubstantial" suits prior to discovery and allowing the defendant to prepare an appropriate response. It should be distinguished from the standard at summary judgment, where a plaintiff alleging judicial deception "must make a substantial showing of deliberate falsehood or reckless disregard for truth" and "establish that, but for the dishonesty, the challenged action would not have occurred." Snell, 920 F.2d at 698; see also Myers, 810 F.2d at 1458; Perlman, 801 F.2d at 264-65; Krohn, 742 F.2d at 31-32.
 
 C
 
 23
 Under this heightened pleading standard, we conclude that Branch's complaint fails adequately to allege a violation of clearly established rights under Franks. Branch makes no effort to identify which allegations in Tunnell's lengthy warrant affidavit he challenges as untrue. His complaint contains no specific affirmative allegation of dishonesty or reckless disregard for the truth. It makes only a single allegation that, in addition to the false information supplied by Donnelly, Tunnell included other, unspecified information which he "knew or should have known" was false. No facts are recited which would indicate that Tunnell actually believed Branch to be innocent of wrongdoing or that he had reason to know that Donnelly would knowingly provide him with false information. Indeed, Tunnell is only a minor player in the conspiracy described in Branch's complaint. This conclusory assertion, unsupported by any specific factual allegations, is insufficient to allege a violation of rights under the heightened pleading standard we adopt today.
 
 IV
 
 24
 For the foregoing reasons, we REVERSE the district court's denial of Tunnell's motion to dismiss and REMAND to the district court. Because we adopt a new heightened pleading standard in this case, the district court should allow the plaintiffs an opportunity to amend their complaint.
 
 
 
 [1]
 The Mineral Leasing Act, 30 U.S.C. Secs. 181-287 (1988), authorizes the Secretary of the Interior to grant federal oil and gas leases to private parties. The Secretary is charged with establishing an auditing and accounting system to assure accurate reporting and payment of royalties from these leases, id. Sec. 1711(a), and possesses broad investigative powers, id. Sec. 1717(a). It was under this authority that Tunnell investigated Branch
 
 
 [2]
 In Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that an alleged violation of the fourth amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages as a result of unconstitutional conduct
 
 
 [3]
 Upon stipulation by the parties, the district court subsequently dismissed without prejudice all of Branch's claims against LaFaver and certain of his claims against Donnelly
 
 
 [4]
 The complaint describes the conspiracy as follows:
 
 
 [12]
 In 1986, the Montana Department of Revenue (MDOR) conducted an audit on various oil and gas field operators to insure the field operators were paying the State of Montana proper amounts of production taxes
 ....
 
 
 [15]
 On May 29, 1987, the MDOR requested documents from a joint venture operation located in Shelby, Montana, and doing business under the name of Aloe Venture [sic] Gathering System ("Aloe Ventures")
 
 
 [16]
 Because certain of the documents requested by the MDOR contained confidentiality clauses and were unrelated to the aforementioned MDOR audit, Aloe Ventures requested that the MDOR explain the relevance of said documents prior to releasing them
 ....
 
 
 [18]
 Thereafter, on July 14, 1987, in a further effort to obtain the confidential documents of Aloe Ventures, Defendant Peter Donnelly contacted members of the Montana Bureau of Land Management, (BLM), including Defendant Dale L. Tunnell for purposes of convincing the BLM that an audit by MDOR, pursuant to a working arrangement between the BLM and MDOR, relative to federal oil and gas leases in which Branch Oil and Gas/Jerry L. Branch own a working interest and from which gas was sold to Aloe Venture [sic] had revealed violations of state and federal law. Defendant Peter Donnelly proceeded on July 14, 1987, to knowingly provide Defendant Dale L. Tunnell of the BLM with inaccurate, unsubstantiated and unfounded allegations of wrongdoing by Branch Oil and Gas, Jerry L. Branch and Aloe ventures [sic] regarding their operations on federal leases. By providing such information, Defendant Peter Donnelly intended that the BLM would take action against Branch Oil and Gas, Jerry L. Branch and Aloe Ventures and thereby the MDOR would obtain the records previously denied to MDOR by Aloe Ventures
 
 
 [5]
 Tunnell has focused his argument on appeal on the court's decision to take his motion for summary judgment under advisement. He characterizes that decision as an "effective denial" of his summary judgment motion, and urges us to treat it as such. Because we reverse the district court's denial of his earlier motion to dismiss, we need not address these arguments or our jurisdiction to entertain them
 
 
 [6]
 Prior to Harlow the qualified immunity test had consisted of both objective and subjective elements. See Harlow, 457 U.S. at 815, 102 S.Ct. at 2736; Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975)
 
 
 [7]
 The Court recently granted certiorari in Siegert v. Gilley, 895 F.2d 797 (D.C.Cir.1990), a case in which subjective motivation was an element of the alleged constitutional violation. Under District of Columbia Circuit precedent, the plaintiff was allowed to plead that the defendant had acted with an unconstitutional motive but was required to conform to that Circuit's heightened pleading standard. The Court affirmed without discussing the interplay between Harlow and subjective intent as an element of the constitutional violation, concluding that the plaintiff failed to allege the violation of a clearly established right. --- U.S. ----, ---- - ----, 111 S.Ct. 1789, 1792-96, 114 L.Ed.2d 277 (1991)
 
 
 [8]
 While a majority of the Supreme Court in Siegert did not reach the issue, four members of the Court expressed approval for some form of heightened pleading standard when subjective intent is an element of the constitutional violation at issue. See --- U.S. at ----, 111 S.Ct. at 1794 (Kennedy, J., concurring in the judgment); id. at ----, 111 S.Ct. at 1800 (Marshall, Blackmun, and Stevens, JJ., dissenting in part). As Justice Kennedy noted,
 The heightened pleading standard is a necessary and appropriate accommodation between the state of mind component of malice and the objective test that prevails in qualified immunity as a general matter. There is a tension between the rationale of Harlow and the requirement of malice, and it seems to me that the heightened pleading requirement is the most workable means to resolve it. The heightened pleading standard is a departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and departs also from the normal standards for summary judgment under Rule 56. But avoidance of disruptive discovery is one of the very purposes for the qualified immunity doctrine, and it is no answer to say that the plaintiff has not yet had the opportunity to engage in discovery. The substantive defense of immunity controls.
 Id. at ----, 111 S.Ct. at 1795 (citation omitted).