**Javier TACHIQUIN, Plaintiff,**

v.

**Charles A. STOWELL, J.M. Donnelly, Charles Hamm, Defendants.**

**No. CV–F–91–340 OWW.**

United States District Court, E.D. California, Fresno Division.

May 4, 1992.

Carolyn D. Phillips, Milrod & Phillips, Fresno, Cal., for plaintiff.

Daniel Bensing, Asst. U.S. Atty., Fresno, Cal., for defendants.

## MEMORANDUM OPINION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WANGER, District Judge.

Defendants move for summary judgment in this *Bivens* action arising out of the warrantless arrest of plaintiff during the execution of a search warrant.

### I

### BACKGROUND

In late May or June of 1990, Thomas C. Allen, a police officer with the Modesto Police Department and assigned to the Stanislaus County Drug Enforcement Unit, provided information to the Drug Enforcement Administration ("DEA") about an ongoing investigation of marijuana cultivation at several farms located in Stanislaus County owned by a Mr. Naraghi. The source of Officer Allen's information about marijuana cultivation is a confidential informant who had provided accurate and reliable information in the past. (Allen Dec. p. 2; Rhea Dec. p. 2; Seal Dec. ¶ 6; Stowell Dec. ¶¶ 13 & 14)

In late May of 1990 the confidential informant observed approximately 300 marijuana plants growing along a creek on the property located at 17428 Keyes Road in Stanislaus County. The confidential informant picked several leaves from these plants and brought them to Modesto Police Officer Allen who tested them and determined the leaves to be marijuana. (Stowell Aff. ¶ 15.)

The confidential informant informed law enforcement officers that an individual named "Chaparo" and a senior foreman on the 17428 Keyes Road property named "Javier" were involved in growing marijuana. The confidential informant stated that he had met with both the plaintiff and Chaparo in a trailer house on the property and drank beer. In one of these meetings, the confidential informant was shown the growing marijuana by plaintiff and Chaparo. (Jacques Dec. ¶ 3, Donnelly Aff. July 2, 1990, ¶¶ 4–5) ("... Both Chaparo and Javier aside from their duties on the ranch, were cultivating a large amount of marijuana in ditch and creek beds ..."); Stowell Dec. ¶ 5; Amended Complaint, ¶ 8 ("the confidential informant named two individuals "Chaparo" and "Javier" as being responsible for the cultivation.").

The confidential informant told officer Allen that "Chaparo" was a large scale dealer in marijuana and "has seen 'Chaparo' deal pounds of marijuana at the single wide mobile home located on the property at 17428 Keyes Road, Denair, California" (Stowell Aff. ¶ 16) and that the individual later identified as plaintiff, Javier Tachiquin, was a manager or caretaker of the property, who was involved in marijuana cultivation. Officer Allen provided that information to Special Agent Stowell before the arrest of plaintiff. (Supp.Allen Dec. ¶ 2(c).)

Javier Tachiquin worked as a foreman on the property known as Naraghi Farms, 17428 Keyes Road, Denair, Stanislaus County, California, at the time of the search on July 2, 1990. (Amended Complaint ¶ 9.) Plaintiff has no evidence that any other individual, who worked at the 17428 Keyes Road property at the time of the search, had a first name of "Javier."

The confidential informant told law enforcement officers that the foreman known as "Javier" was Chaparo's "boss" in marijuana cultivation at 17428 Keyes Road. (Donnelly Aff. ¶ 5; ("... A foreman on the property named 'Javier' was also involved in the cultivation of marijuana and was in fact, 'Chaparo's' boss ..."); Stowell Dec. ¶ 5 ("... Tachiquin had delegated responsi-

bility to 'Chaparo' to sell marijuana and that 'Chaparo' would get a portion of the profits in the sale of marijuana for his work.") Plaintiff, in his affidavit filed in opposition to defendant's motion for summary judgment did not disclaim involvement in or knowledge of the marijuana cultivation.

Agent Stowell conducted a "fly-over" of the property at 17428 Keyes Road and observed numerous marijuana plants growing on the property. (Stowell Dec. ¶ 6; Donnelly Aff. ¶ 6; Stowell Aff. ¶ 24: "... On June 26, 1990, at approximately 1:00 p.m. your affiant ... flew in a DEA aircraft over the property located at 17428 Keyes Road ... [and] observed approximately 50–100 Cannabis plants growing in the creek....")

Based upon the affidavit of Special Agent Charles Stowell, federal law enforcement officers obtained a search warrant to search the property at 17428 Keyes Road. (Stowell Aff.; Stowell Dec. ¶ 7.) On July 2, 1990, federal and state law enforcement officers conducted a search of the premises at 17428 Keyes Road, Denair, Stanislaus County, California, where they discovered numerous marijuana plants growing in the creek bed; both plaintiff and "Chaparo," later identified as Ysidro Gonzalez–Rodriguez, were then arrested. (Stowell Dec. ¶ 9; Donnelly Aff. ¶¶ 7–9.)

On July 2, 1990, a criminal complaint charging plaintiff and Gonzalez–Rodriguez with conspiracy to cultivate marijuana was presented to U.S. District Judge Edward Dean Price, supported by the affidavit of DEA Agent Donnelly. Judge Price determined there was probable cause for the arrest by signing the criminal complaint against plaintiff and Gonzalez–Rodriguez. Exhibit B–2. The complaint against Javier Tachiquin and Ysidro Gonzalez–Rodriguez was dismissed by the United States Attorneys Office after it was informed the confidential informant would not testify. (Dec. Patrick Hanly.)

STANDARDS ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252–56, 106 S.Ct. 2505, 2512–14. (1986). The Court in *Celotex* elaborated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322–323, 106 S.Ct. at 2552. This standard applies in the Ninth Circuit. *Shaw v. Lindheim*, 908 F.2d 531, 536–537 (9th Cir.1990); *U.S. v. Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 490 (9th Cir. 1990).

The Court is not obligated to consider matters not specifically brought to its attention. *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 249, 106 S.Ct. at 2510. Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible under rules governing admission of evidence generally. *Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 883 F.2d 1429, 1437 (9th Cir.1989).

The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment. *Matsushita v. Zenith Radio*, 475 U.S. 587, 106 S.Ct. at 1356. Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its fa-

vor." *Anderson v. Liberty Lobby, supra,* 477 U.S. at 255, 106 S.Ct. at 2513. The Court's role on summary judgment, however, is not to weigh the evidence (issue resolution), but rather it is issue finding. *Id.*

### The Heightened Pleading Standard.

■ A heightened pleading standard applies to claims asserted against federal officials in their individual capacities. This standard requires plaintiffs to state facts with particularity that demonstrate "who did what to whom and why." *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. den.,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983).

This heightened pleading standard was expressly adopted by the Ninth Circuit in *Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991):

> We therefore adopt a heightened pleading standard in cases in which subjective intent is an element of a constitutional tort action. We hold that in order to survive a motion to dismiss, *plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent.* "The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." (emphasis added)

*Id.* at 1386, *quoting Whitacre v. Davey,* 890 F.2d 1168 (D.C.Cir.1989), *cert. den.,* — U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990).

The *Branch* Court relied heavily on the D.C. Circuit's numerous decisions discussing the scope and application of the heightened pleading standard. *See, e.g., Siegert v. Gilley,* 895 F.2d 797, 802 (D.C.Cir.1990), *aff'd* — U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("[discriminatory] intent must be pleaded with specific, discernible facts or offers of proof ..."); *Whitacre v. Davey, supra,* at 1171 n. 4; *Martin v. Malhoyt,* 830 F.2d 237, 254 (D.C.Cir.1987) (plaintiffs must "at the very least specify the 'clearly established' rights they allege

to have been violated with ... precision"), *reh'g denied,* 833 F.2d 1049 (D.C.Cir.1987); *Smith v. Nixon,* 807 F.2d 197, 200 (D.C.Cir. 1986) ("[b]are allegations of improper purpose, like the bare allegations of malice rejected in *Harlow [v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)], do not suffice to drag officials into the mire of discovery"). In *Siegert v. Gilley,* while the Supreme Court found it unnecessary to adopt a heightened pleading standard, several Justices (Kennedy, Marshall, Blackmun and Stevens) appeared willing to do so in an appropriate case. *See Branch, supra,* at 1386 n. 8. And Justice Kennedy, in his concurring opinion expressly concluded that

> [t]he heightened pleading standard is a necessary and appropriate accommodation between the state of mind component of malice and the objective test that prevails in qualified immunity analysis as a general matter.

111 S.Ct. at 1795.

The allegations in this case do not satisfy this rigorous standard. Plaintiff has not plead a false arrest claim by simply alleging that he was arrested and then not prosecuted. The facts as alleged in plaintiff's complaint do not demonstrate an absence of probable cause for a warrantless arrest. Plaintiff did not allege in the complaint, nor assert in any declaration submitted in opposition to the motion that any defendant acted out of improper motive or intended to harm plaintiff in any way. Plaintiff's concurring allegations are insufficient. Plaintiff's failure in three separate oppositions to the motion to allege any fact that would support an inference that any defendant acted in any manner that is objective by unreasonable and violative of clearly established statutory or constitutional rights obviates granting an opportunity to amend the complaint. *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

Failure to meet the heightened pleading standard means that the individual defendants are entitled to official immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102

S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that federal officers are:

> shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. The policies underlying the doctrine recognize that exposing government officials to individual liability "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

The determination of qualified immunity under *Harlow* requires an objective, not subjective, analysis. *McSurley v. McClellan,* 697 F.2d 309, 316 (D.C.Cir. 1982); *Krohn v. United States,* 742 F.2d 24 (1st Cir.1984); *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). The question is not what motivated agent Stowell in arresting the plaintiff on July 2, 1990. Rather it is whether a reasonable law enforcement officer in agent Stowell's position would have known that he was violating plaintiff's clearly established constitutional right in making this arrest. *Anderson v. Creighton, supra,* 483 U.S. at 638–39, 107 S.Ct. at 3038–39; *Martin v. Malhoyt,* 830 F.2d at 253.

A defendant is entitled to qualified immunity if his actions were reasonable under the totality of the circumstances, even if those actions may be later determined to have violated the plaintiff's constitutional rights. *Anderson v. Creighton, supra,* 483 U.S. at 638–39, 107 S.Ct. at 3038–39; *Martin v. Malhoyt,* 830 F.2d at 253; *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), quoting *Scheuer v. Rhodes,* 416 U.S. 232, 244–45, 94 S.Ct. 1683, 1690, 40 L.Ed.2d 90 (1974).

In the law enforcement context, a judicial determination that an officer lacked probable cause for an arrest or a search does not, in and of itself, bar that officer from relying on the defense of qualified immunity:

> We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Anderson, supra,* 483 U.S. at 641, 107 S.Ct. at 3039–40; *see also, Fuller v. M.G. Jewelry,* 950 F.2d 1437 (9th Cir.1991); *Tomer v. Gates,* 811 F.2d 1240, 1242 (9th Cir.1987). Rather, the inquiry must be whether a reasonable law enforcement officer in the defendant's position knew, at the time of the events in question, that the absence of probable cause for the arrest was so clear and unmistakable that making the arrest undoubtedly violated plaintiff's constitutional right to be free from false arrest. As the Supreme Court explained, qualified immunity protects from suit "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

If the plaintiff fails to state with specificity a "claim of a violation of a clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). "One of the purposes of immunity ... is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley,* 111 S.Ct. at 1793. "The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell, supra,* 472 U.S. at 526, 105 S.Ct. at 2815.

*Branch* states that a district court may allow "narrowly tailored discovery" in *Bivens* cases, *Branch, supra,* at 1387, however no discovery whatever, narrowly tailored or otherwise, may be permitted if the

*Bivens* defendant has shown in a motion for summary judgment, that he is entitled to qualified immunity. This point was explicitly recognized in footnote 6 of *Anderson v. Creighton,* which was cited by the *Branch* court immediately after the quoted passage:

Thus on remand, it should first be determined whether the actions the Creightons [plaintiffs] allege Anderson [the law enforcement officer] to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson is entitled to dismissal prior to discovery. If they are not, and if the action Anderson claims he took are different from those the Creightons allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before Anderson's motion for summary judgment on qualified immunity grounds can be resolved. Of course any such discovery should be tailored specifically to the question of Anderson's qualified immunity.

483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6 (citation omitted). If the plaintiff, without the benefit of any discovery, is unable to contradict any of defendant's undisputed material facts, and if those facts establish immunity as a matter of law, the case is over without plaintiff *ever* having the opportunity for discovery. *See, Bryant v. U.S. Treasury Dept. Secret Service,* 903 F.2d 717, 721 (9th Cir.1990), *rev'd sum nom. Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Plaintiff has never identified any *material evidence* to support his allegation that defendant Stowell lacked probable cause to make his warrantless arrest. Plaintiff limits himself to the unsupported allegations of counsel and suggested inferences that the court should draw from irrelevant statements in his declarations. The statement of material facts presented by federal defendants—including the critical fact that the confidential informant provided reliable information that the manager named "Javier" was involved in the marijuana cultivation and that this information was communicated to Agent Stowell by Agent Jacques;

stands entirely unrebutted by any evidence. From a plain reading of Federal Rule of Civil Procedure 56, plaintiff's submission is not sufficient to defeat federal defendants' motion:

When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,* but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. (Emphasis added.)

Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see generally* 10A Wright & Miller *Federal Practice and Procedure* § 2739. All of federal defendants' statements of material facts can therefore be accepted as true. *See* Rule 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.")

Law enforcement officers may make warrantless arrests where there are "reasonable grounds to believe" that a crime has been committed and the person arrested has committed the offense. *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). "Probable cause exists where the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a wealth of reasonable caution in the belief that an offense has been or is being committed." *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (overruled on other grounds *United States v. Chadwick,* 433 U.S. 1, 8, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977)).

Where, as here, a significant factor in the determination of probable cause is information obtained from an informant, the Supreme Court has formulated a "totality of the circumstances" test to evaluate whether probable cause exists. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In so ruling, the Court

rejected the "two pronged" test of *Aguilar v. State of Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which still recognizes that the informant's "veracity" and "basis of knowledge" are critical in determining the existence of probable cause.

 In this case, there is ample indicia that the confidential informant had both extensive first hand knowledge of the marijuana cultivation he described, and an established reputation for veracity. The confidential informant personally observed a large quantity of marijuana growing by the creek on the 17428 Keyes Road property and had personally seen "Chaparo deal pounds of marijuana" at his mobile home on the Keyes Road property. (Stowell Affidavit at pp. 7–8.) The confidential informant had provided reliable information to the Stanislaus County Drug Enforcement Agency on at least three occasions within the past 60 days and the information he provided never proved to be false. *Id.* at p. 5. Taken in conjunction with the other information known to the officers at the time of the arrest, particularly the verification of the presence of marijuana on the Keyes Road property and the fact a senior foreman named Javier (plaintiff) was found on the property as described by the confidential informant, agent Stowell had more than adequate probable cause for the arrest.

There is no dispute whatever as to the information Stowell had before arresting the plaintiff. Agent Stowell knew, *inter alia,* that a reliable informant had told him that "Chaparo" was growing marijuana at 17428 Keyes Road and that a foreman at that ranch, one "Javier" was also involved and was "Chaparo's boss." The confidential informant also included a "physical description" of both "Chaparo" and "Javier." *See* Donnelly Affidavit, paragraph 5, lines 21–22. The presence of growing marijuana was confirmed by aerial surveillance. During the search, Agent Stowell confirmed that marijuana was growing on the Keyes Road property and Javier Tachiquin, a foreman on the Keyes Road property, was present.

Plaintiff argues the minor inconsistencies in various declarations and affidavits of law enforcement officers should cause the court to allow the case to go forward to discovery and trial because issues of credibility exist. It is well settled that the existence of disputes as to *immaterial* facts does not foreclose the granting of summary judgment.

Where the essential elements of defendants' assertion of probable cause stand unrebutted, the fact that there may be disputes as to other, immaterial facts, does not justify a conclusion that those specifically enumerated and unrebutted assertions of defendant's declarants are materially in dispute. Disputes as to clearly immaterial facts do not require any finding as to Agent Stowell's credibility, nor has Agent Stowell's credibility been placed in issue thereby. The unchallenged evidence shows that he had more than ample probable cause to believe that an individual named Javier, who was a foreman on the 17428 Keyes Road property in Denair, was involved in the cultivation of marijuana on that land. The marijuana was growing on that property where the plaintiff was a foreman. The issuance of the criminal complaint against plaintiff based upon such probable cause validated the search and its fruits.

 Plaintiff also argued that defendant Stowell knew that the confidential informant would not be willing to testify and that therefore a conviction could not be obtained. *See, e.g.,* Allen Declaration. Even if this were true, it is legally irrelevant. Law enforcement agents are not required to determine whether they have gathered sufficient evidence to convict defendant before making an arrest. Instead, law enforcement officers are charged with a much simpler obligation, to determine whether—

> facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

*Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). Frequently, an officer may have probable cause for an arrest, while recognizing that based upon what the government knows at that time, proving the case at trial will be difficult. Arrest may be only the first stage in a criminal investigation and prosecution; as the investigation proceeds, additional evidence is frequently developed.

Lack of assurance that a suspect will be convicted based on evidence known or discovered at the time of a pre-arrest search or at the time of an arrest does not equate to an absence of probable cause, nor does it constitute a knowing violation of clearly established constitutional rights. Law enforcement is entitled to continue the investigation process to uncover additional evidence to bolster its case.

Even assuming that Agent Stowell knew the informant would not testify, there was physical evidence of growing marijuana on the property, the plaintiff was the foreman on the Keyes Road Ranch, he had been identified as involved in marijuana cultivation. The only inquiry necessary is that a determination be made from the undisputed material facts that Agent Stowell had probable cause for the warrantless arrest of plaintiff. Once that determination is made, the federal defendants are entitled to qualified immunity as a matter of law. It is not relevant whether the arrest would ultimately lead to a conviction after trial.

■■■ The question of whether a reasonable officer would have concluded that he had probable cause for an arrest under the circumstances is not ordinarily a question of fact for the jury. In *Hunter v. Bryant*, the Supreme Court stated: "[I]mmunity ordinarily should be decided by the Court [as a matter of law] long before trial." *Id.* 112 S.Ct. at 537.

In *Hunter*, the Court further noted that in ruling on the issue of qualified immunity, the inquiry must be "whether the agents acted reasonably under settled law and the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed" years later. *Id.*

In ruling on qualified immunity, the issue presented is a *question of law*: was defendant's conduct, as set forth in the statement of undisputed material facts, reasonable (i.e. did the defendant have probable cause and if not, was the absence of probable cause so clear as to constitute a violation of a clearly established constitutional right) under the law as it existed at the time? Defendant Stowell had probable cause for the arrest of plaintiff.

*Effect Of Issuance Of Criminal Complaint.*

■■■ Another basis for granting defendants' immunity from suit, in part, exists, based upon the July 2, 1990, affidavit of Agent Donnelly. Judge Edward Dean Price signed the criminal complaint against Gonzales–Rodriguez and Tachiquin. "Filing of a criminal complaint immunizes investigating officers ... from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.) *cert. den.*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). Since prosecutors are absolutely immune from individual liability, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), their intervening determination to file charges relieves the law enforcement officer from any further liability.

While this presumption is rebuttable, where, as here, the plaintiff has not proffered such evidence, the *Smiddy* doctrine provides a separate and adequate basis for immunity. *See Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir.1986). Immunity pursuant to the *Smiddy* doctrine does not apply until the time Judge Price signed the criminal complaint sometime after 10:00 a.m. on July 2, 1990.

The motion of federal defendants for summary judgment must be granted.