Florence SOMAVIA and Foremost
Insurance Company,
Plaintiffs,

v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, a political subdivision
of the State of Nevada, Police Officers
Sgt. Rod Jett, Officers Margell, Salinas,
Goen and Adam, individually and as po-
lice officers employed by the Las Vegas
Metropolitan Police Department, Defen-
dants.

No. CV–S–91–884–PMP (RJJ).

United States District Court,
D. Nevada.

March 10, 1993.

Cal J. Potter, III, Potter Law Offices, Las Vegas, NV, for plaintiffs.

Brian C. Whitaker, Rawlings, Olson & Cannon, Las Vegas, NV, for defendants.

ORDER

PRO, District Judge.

This case arises out of events surrounding the execution of a Search Warrant executed at Plaintiff Florence Somavia's residence on November 17, 1989. Before this Court are several Motions filed by Defendants Las Vegas Metropolitan Police Department ("Metro") and Officers Jett, Margell, and Salinas. Metro filed a Motion for Summary Judgment on the issue of the legality of the search (# 48) on October 30, 1992. Plaintiffs Florence Somavia ("Somavia") and Foremost Insurance Company ("Foremost") filed an Opposition (# 49) on November 17, 1992. Metro filed a Reply (# 52) on December 14, 1992.

Metro filed a second Motion for Summary Judgment on Somavia's § 1983 claim (# 50) on November 20, 1992. Plaintiffs filed an Opposition (# 53) on December 24, 1992, and Metro filed its Reply (# 56) on January 11, 1993. On December 24, 1992, Defendants filed a Motion in Limine or in the alternative to Reopen Discovery (# 54) regarding property damage to Somavia's trailer. Plaintiffs filed an Opposition (# 58) on January 19, 1993, and Defendants filed their Reply (# 61) on January 28, 1993.

Finally, Defendants Salinas, Margell, and Jett filed a Motion for Summary Judgment in their individual capacity on qualified immunity grounds (# 55) on December 24, 1992. Plaintiffs filed an Opposition (# 60) on January 26, 1993, and those Defendants filed their Reply (# 64) on February 24, 1993.

## I. FACTS

On November 16, 1989, Magistrate Judge Robert Johnston issued a search warrant based upon information contained in an affidavit sworn by Agent John Torres of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). This warrant authorized the search of premises known as a single story residential dwelling at 7052 Meranto in Las Vegas, Nevada. In his affidavit, Agent Torres indicated that he had information that illegal firearms would be found in this residence. Agent Torres also indicated that he had information that the person believed to be the owner of this house was a manufactur-

er of illegal controlled substances, namely methamphetamine.

According to the Defendants, ATF enlisted the aid of Metro and other agencies in serving this warrant. On November 17, 1989, the various agencies executed the warrant. In addition to the house located at that address, there was a green "outbuilding" and a fifth-wheel trailer. Officers Salinas, Margell, and Jett were assigned to secure the trailer. According to Salinas and Jett, at the pre-raid briefing, they were told of the possibility that there might be armed and dangerous individuals present in the trailer. When the officers entered the trailer, however, they found only Somavia.

## II. STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California*

*Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

■ If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

■ A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

■ All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

### III. MOTION FOR SUMMARY JUDGMENT REGARDING QUALIFIED IMMUNITY FILED BY DEFENDANTS SALINAS, MARGELL, AND JETT (# 55)

Somavia alleges that on the morning of November 17, 1989, she heard two gun shots fired. The next thing she knew, the door to her trailer had been blown off and men were standing in her trailer. These men were law enforcement officers although, according to her, they wore no identification and did not announce their presence before they entered the trailer. One of these officers allegedly struck her and knocked her to the floor. She further alleges that one or more of these men stepped on her back more than once, made threatening remarks, grabbed her by the arm, pushed her against a sink, and handcuffed her with her arms behind her back. Somavia also contends that she was forced to sit on a stair located between the bathroom and kitchen, and that a pistol was trained on her for more than two hours while the agents ransacked her trailer.

According to the Defendant Officers, they did yell "police" before blowing the lock off of Plaintiff's door.[1] Defendants also state that they merely assisted ATF in serving the search warrant. They allege that it took approximately 15 seconds to successfully secure the trailer. According to Defendants, upon entering the trailer, Officer Salinas took hold of Plaintiff's clothing to move her out of his way when she failed to respond to his command to "get down," and that after Salinas grabbed her, she went into a sitting position on the floor. Furthermore, Defendants assert that Officer Jett escorted Somavia out of the trailer so she would be better able to breathe, as the device that blew the lock off of the door resulted in some smoke

entering the trailer. All of these actions, according to Defendants, took no more than ten to fifteen minutes, after which these Metro Officers "turned the scene over" to the control of ATF.

Plaintiff Somavia has not contradicted Defendants' assertions that Officers Salinas, Jett, and Margell were on the scene for approximately fifteen minutes, and took no action with respect to Somavia after they brought her out of the trailer. Thus, the actions of Defendants subject to scrutiny in this qualified immunity motion are those that took place from the time before the lock on the trailer door was blown, until the time Defendants left Plaintiff under the authority of ATF. This Court considers these actions in the light most favorable to Somavia, the nonmovant.

The Defendant Officers argue that they should enjoy qualified immunity regarding (1) the execution of the search warrant upon Somavia's trailer, (2) the allegation that they violated the "knock and announce" rule, and (3) Somavia's excessive force claim.

■ Qualified immunity is immunity from suit, and not merely a defense to liability. *Hunter v. Bryant*, —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Under Supreme Court and Ninth Circuit precedent, "when a law enforcement officer asserts qualified immunity from liability for civil rights violations, the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer could have reasonably believed that his conduct was lawful." *Act Up!/Portland v. Bagley*, 971 F.2d 298, 300–01 (9th Cir.1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). An officer will not be held liable unless it was clear to the officer that his conduct was unlawful in light of preexisting law and circumstances. *See Anderson*, 483 U.S. at 640–41, 107 S.Ct. at 3039–40.

■ This Court finds that Officers Salinas, Margell, and Jett are entitled to qualified immunity regarding the execution of the

---

1. Agent Torres testified that he heard "police" shouted before the officers blew up the locks. Officer Salinas also testified that he and the other officers who entered the trailer shouted "police" before they entered.

search warrant.[2] Whether or not probable cause supported the issuance of the warrant or the warrant was facially valid, it is clear that a reasonable officer reading that warrant would not have known that searching Somavia's trailer was clearly illegal. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Branch v. Tunnell,* 937 F.2d 1382, 1385 (9th Cir.1991) (basing the test for qualified immunity on an objective reasonableness standard); *see also Hunter,* —— U.S. at ——, 112 S.Ct. at 536 (stating that officers who reasonably but mistakenly believe that probable cause is present are entitled to immunity).

■ Defendants are also entitled to summary judgment on Somavia's allegation that they violated the "knock and announce" rule. Somavia has produced no evidence to contradict the testimony of Torres and Salinas that the officers identified themselves prior to entry. In fact, Somavia admits to hearing "yelling and screaming" prior the officers' entry.

Where there is a claim of excessive force and a subsequent assertion of qualified immunity, a court's inquiry focuses on

> whether the totality of the circumstances (taking into consideration the facts and circumstances of the particular case; including the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether he is actively resisting arrest or attempting to evade arrest by flight) justified the particular type of seizure.

*Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir.1991) (citations omitted). Furthermore, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Id.* (citation omitted).

■ This Court finds that even taking Somavia's version of the officers' actions as true, qualified immunity is appropriate as to Officers Margell, Salinas, and Jett. They received information that a dangerous and possibly armed man was in the trailer, and upon entering the trailer, they took quick action to secure the area. Although the use of force against Somavia may not now seem to have been necessary and is certainly regrettable, the reasonableness of the use of force cannot be judged "with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).[3]

## IV. MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S THIRD CAUSE OF ACTION (# 50)

■ Defendant Metro moves this Court for Summary Judgment on Somavia's Third Cause of Action. Count Three alleges that the actions of the Defendant Officers resulted from, and were taken "pursuant to a *de facto* policy of Metro to summarily punish persons who refuse to obey police orders, whether lawful or not, by means of unlawful detention, arrest, and the use of excessive force." Somavia further alleges that the officers' actions were caused by Metro's failure to adequately train its officers.

In order to survive Defendant's Motion for Summary Judgment, Somavia must provide some proof of a custom or practice on the part of Defendants. "Municipal liability under section 1983 can only be imposed for injuries inflicted pursuant to an official government policy or custom." *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233 (9th Cir. 1989) (citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Furthermore, "municipalities cannot be held liable based solely because they employ a tortfeasor." *Id.* at 1234.

A recent Ninth Circuit opinion discussed the methods by which a plaintiff can prove municipality liability under section 1983.

---

**2.** Metro has moved this Court for Summary Judgment regarding the legality of the search (# 48). Because this Court holds that neither the officers nor Metro are liable under Plaintiff's federal causes of action, it is unnecessary to decide this issue.

**3.** Although not part of Defendants' Summary Judgment motion, Plaintiff also claims damages for false imprisonment/unlawful detention against the Metro officers. This Court finds that qualified immunity attaches to the actions implicated by this allegation as well.

A section 1983 plaintiff may establish municipal liability one of three ways. First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore,* 979 F.2d 1342 (9th Cir. 1992) (internal citations omitted).

Somavia's only affirmative evidence of a custom or practice comes in the form of a copy of her answers to Metro's interrogatories. In these answers, she refers to several other lawsuits against Metro, each suit having the same or similar factual scenarios. Somavia contends that this information carries her burden of coming forth with evidence, and thereby enables this Court to make a finding of an illegal policy or custom and inadequate training. This list is her only affirmative evidence.

"Sufficiently numerous prior incidents of police misconduct ... may tend to prove a custom and accession to that custom by the municipality's policymakers." *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir.1989) (citations omitted). In this case, however, Somavia has not provided this Court with any facts backing her claim that the cases she cited in her answers to Defendant's interrogatories support her allegation of a custom. All this Court has before it are names of "similar occurrences." There is no way to know if this list represents complaints filed with Metro or in a court of law, what the outcome was in each case, and what the facts of each case were. Without this proof, Somavia has failed to meet her burden of putting forth some evidence to support her complaint.

Similarly, although Somavia's complaint alleges that the officers who entered her trailer did so pursuant to an official policy, she provides absolutely no evidence of such a policy. As such, summary judgment in favor of Metro on this issue is also appropriate.

██ If a federal claim against a party is dismissed before trial, the pendent state law claims should also be dismissed. *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985); *Jones v. Community Redevelopment Agency,* 733 F.2d 646 (9th Cir.1984). All of the federal claims sought by Plaintiff under the present Complaint have been dismissed. As such, the remaining state law claims presented should also be dismissed without prejudice. *Copeland v. Desert Inn Hotel,* 99 Nev. 823, 673 P.2d 490, 492 (1984).

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment (# 55) and Defendant Metro's Motion for Summary Judgment (# 50) are hereby granted, and that Judgment is hereby entered in favor of Defendants and against Plaintiff as to Plaintiff's federal claims.

IT IS FURTHER ORDERED THAT Plaintiff's state law claims are hereby dismissed without prejudice.

IT IS FURTHER ORDERED THAT Defendant Metro's Motion for Summary Judgment (# 48) is denied as moot.

IT IS FURTHER ORDERED THAT Defendants' Motion in Limine (# 54) is denied.